UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KEVIN LAQUAN TRICE,

Plaintiff,

v.

STATE OF CALIFORNIA, *et al.*

Defendants.

Case No. 1:26-cv-06846-EPG (PC)

FINDINGS AND RECOMMENDATIONS THAT (1) THIS CASE PROCEED ONLY ON PLAINTIFF'S CLAIM OF FAILURE TO PROTOECT IN VIOLATION OF THE EIGHTH AMENDMENT AGAINST DEFENDANTS CRUZ, RODRIGUEZ, AND DOES 1-5 AND (2) ALL REMAINING DEFENDANTS AND CLAIMS ARE DISMISSED

(ECF No. 6)

OBJECTIONS, IF ANY, DUE WITHIN 30 DAYS

ORDER DIRECTING CLERK OF COURT TO ASSIGN A DISTRICT JUDGE TO THE CASE

## I. INTRODUCTION

Plaintiff Kevin Trice is proceeding pro se and in forma pauperis in this civil rights action filed under 42 U.S.C. § 1983. (ECF Nos. 1, 2). In his complaint filed on August 27, 2026, Plaintiff generally alleges he suffered a workplace injury at Kern Valley State Prison following an attempt to retrieve an item that was stuck in a vending machine located at the prison. (See ECF No. 1).

On September 3, 2026, the Court screened the complaint, concluding that only the following claims may proceed past screening: failure to protect and/or failure to intervene

claim against Defendants Cruz, Rodriguez and DOES 1-5. (ECF No. 6 at 1). The Court also explained why the complaint failed to state any other cognizable claims. The Court gave Plaintiff thirty days to either file (1) a notice to proceed on these claims, (2) a first amended complaint; or (3) a notice to stand on his complaint and have it reviewed by a district judge. (*Id.* at 8-9).

Plaintiff has yet to comply with the screening order and the time to do so has passed. As such, the Court recommends the case proceed only with Plaintiff's claim of failure to protect/failure to intervene against Defendants Cruz, Rodriguez and DOES 1-5 and all remaining defendants and claims be dismissed.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner raises claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Because Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915(e)(2)(B)(i-iii), which directs the Court to dismiss a case at any time if the Court determines that it is frivolous or malicious, fails to state a claim, or seeks relief against an immune defendant.

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677,

681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## III. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff filed the complaint commencing this action on August 27, 2026. Plaintiff sues thirty-two (32) defendants: (1) State of California; (2) California Department of Corrections and Rehabilitation ("CDCR"); (3) Diane Roche, Undersecretary of California Correctional Health Care Services ("CCHCS") with CDCR; (4) J. Clark Kelso, Federal Receiver of CCHCS; (5) Brittany Brizendine, Director of CCHCS; (6) Patwin Horn, Kern Valley State Prison ("KVSP") Warden; (7) Steve Cranmer, KVSP Chief Deputy Warden; (8) Edward Silva, California State Prison, Corcoran ("CSP-Corcoran") Acting Warden; (9) Fred Beyerlein, Health Care CEO of KSVP; (10) Edward Martin, Health Care CEO of CSP-Corcoran; (11) correctional officer Cruz; (12) correctional officer Rodriguez; (13) Lucy Ballesteros, RN at KSVP; (14) I. Alcanatr, CHSA II at KSVP; (15) Dr. Guarav Aggarwal at CSP-Corcoran; Price, RN; and various DOE defendants, including an RN, physical therapist, Chief Medical Officer, and Physician. (ECF No. 1 at 4-9). Plaintiff states all defendants are sued in their individual capacities. Plaintiff alleges the incidents occurred at KSVP and CSP-Corcoran from April 12, 2025, to April 12, 2026.

Plaintiff alleges the following: On April 12, 2025, Plaintiff was assigned as a porter in the D-Yard visiting room at KSVP. (*Id.* at 10). His duties were limited to cleaning, trash disposal, photographing inmates and visitors, and distributing games and utensils. (*Id.*). Plaintiff represents that vending machines in the visiting room were outfitted with safety bars to prevent tipping of the machine. (*Id.*). Plaintiff states on April 12, a visitor requested assistance with a stuck item in the vending machine. (*Id.*). This vending machine also had a bent safety bar, which Plaintiff claims CDCR officials at KSVP, including defendant Horn, were or should

have been aware of. Defendant Cruz ordered Plaintiff to assist him by rocking the machine, attempting to dislodge the stuck item. (*Id.*). Plaintiff states he placed his left hand and forearm into the slot for dispensing items while correctional officer Doe 2 was assisting. (*Id.* at 11). Plaintiff claims that without warning, the assisting correctional officer let go of the vending machine, causing Plaintiff's left arm to become hyperextended in the dispenser slot. (*Id.*) While officers pulled Plaintiff away from the machine, he heard an audible "popping" sound, and he saw a "three-centimeter gap between the bicep muscle and elbow joint." (*Id.*). Plaintiff was then escorted to triage where defendant RN Doe 6 discharged Plaintiff without treatment and no referral. (*Id.* at 11).

Following the injury, Plaintiff claims CDCR failed to comply with its mandatory reporting obligations as his employer, violating numerous labor code statutes. (*Id.* at 12).

Plaintiff claims he received delayed and inadequate medical care at KSVP. He represents that on April 29, 2025, a x-ray of the left humerus—but no bicep x-ray—was ordered, which was conducted on May 1, 2025 (*Id.* at 13). On July 24, 2025, Plaintiff states he had a primary care physician visit, where he received an ultrasound and had physical therapy ordered, but nothing else. (*Id.*). Following these procedures, Plaintiff states he filed a healthcare grievance, and the response falsely stated defendant Lucy Ballesteros attempted to interview Plaintiff on September 30, 2025, and October 1-3, 2025, but Plaintiff had already been transferred from KSVP to CSP-Corcoran. (*Id.*). Plaintiff further states this transfer was a retaliatory response for filing these grievances. (*Id.*).

Plaintiff next claims that in September 2025, he had a telehealth appointment with Dr. Aggarwal, but was physically examined by defendant Price, an RN who was present in the room at CSP-Corcoran. (*Id.*). Plaintiff states defendant Price represented to Dr. Aggarwal "the bicep feels like a watery or puss [sic] filled sac, muscle is collapsed, and tendons appear to be in the wrong area in the bicep and forearm." (*Id.* at 14). Plaintiff states "these findings are classic for a complete distal bicep tendon rupture." (*Id.*). However, Dr. Aggarwal did not order

an MRI or refer Plaintiff to a specialist. (*Id.*). Plaintiff had a subsequent visit with Dr. Aggarwal, where results of a CT scan were reviewed and some damage and scar tissue were found. Plaintiff claims that Dr. Aggarwal informed Plaintiff that the Chief Medical Officer had "decided to change diagnosis from a left bicep rupture to a left shoulder injury." (*Id.*at 14-15).

On January 1, 2026, Plaintiff had an ultrasound of his left arm and was informed by the ultrasound technician that the ultrasound was not the correct diagnostic method and referred Plaintiff for a MRI, which was given on April 7, 2026 and reviewed by Dr. Aggarwal on April 12, 2026. (*Id.* at 15-16). Plaintiff claims during this telehealth appointment, Dr. Aggarwal found no evidence of a tendon tear but could not rule out a bicep injury. Further, Plaintiff states defendant Price performed a physical examination of his left bicep, which demonstrated there was an indentation of approximately 3 to 6 centimeters between the bicep and elbow joint. (*Id.* at 16). Plaintiff was referred to a specialist on April 12, 2026, who ordered another MRI, which revealed tendon tears and scar tissue around his left bicep and triceps. (*Id.* at 17).

Plaintiff goes on to list the probable diagnosis of his injury (based on his interpretation) and the time period to be provided with a correct diagnosis. (*Id.*).

Plaintiff lists twelve claims and seeks monetary damages, as well as injunctive and declaratory relief. (*Id.* at 20-28). Plaintiff represents he exhausted administrative remedies and failed to timely file a California government claims act grievance. (*Id.* at 20).

On September 3, 2026, the Court screened Plaintiff's complaint. (ECF No. 6). In the screening order, the Court found the Plaintiff's failure to protect and/or failure to intervene claim against defendants Cruz, Rodriguez and DOES 1-5 may proceed past screening. However, the Court found that Plaintiff's complaint failed to state any other claims against any of the remaining defendants.

The Court provided Plaintiff with options on how to proceed following the screening order, including (1) Notifying the Court that he Wants to Proceed Only on the Claim of Failure to Protect in Violation of the Eighth Amendment Against Defendants Cruz, Rodriguez, and DOES 1-5 and Dismiss all Remaining Defendants and Claims; (2) Filing a First Amended

Complaint; or (3) Notify the Court that he Wants to Stand on His Complaint. Plaintiff's response to the screening order was due on October 3, 2026. (ECF No. 6).

Plaintiff did not file a response to the screening order by the deadline and the time to do so has passed.

## I. ANALYSIS OF PLAINTIFF'S COMPLAINT

### a. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

"The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others

to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

**b. Supervisor Liability**

Plaintiff brings numerous claims against supervisory defendants. These defendants are: Diane Roche, Undersecretary of California Correctional Health Care Services ("CCHCS") with CDCR; J. Clark Kelso, Federal Receiver of CCHCS; Brittany Brizendine, Director of CCHCS; Patwin Horn, Kern Valley State Prison ("KVSP") Warden; Steve Cranmer, KVSP Chief Deputy Warden; (8) Edward Silva, California State Prison, Corcoran ("CSP-Corcoran") Acting Warden; Fred Beyerlein, Health Care CEO of KSVP; and Edward Martin, Health Care CEO of CSP-Corcoran;

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional

violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

While Plaintiff's complaint asserts numerous causes of actions against defendant supervisors, none are sufficient to allege cognizable claims under supervisor liability. Plaintiff has not alleged a casual link between any of the supervisory defendants and the respective claims he brings against the people they supervised. Moreover, while Plaintiff asserts vague and conclusory statements that the various supervisors either knew of or had knowledge, or implemented certain policies, Plaintiff provides no supporting factual allegations. Indeed, Plaintiff himself states that the order given by correctional officer defendants to retrieve the stuck item "was in direct violation of posted CDCR policy prohibiting inmates from touching vending machines." (ECF No. 1 at 10).

As such, Plaintiff has not sufficiently alleged that any of the above supervisory defendants were personally involved in his accident or his medical treatment, instituted a policy that caused his issues with medical treatment, knew of any violations, but failed to prevent such violations, or failed to train or supervise any subordinates a way that led to any constitutional violations.

**c. Failure to Protect and Failure to Intervene**

Plaintiff brings a claim of failure to protect/failure to intervene against defendants Cruz, Rodriguez and DOES 1-5.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . . " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and quotation marks omitted). Among other things, the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Id.* (citation omitted). To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Id.* at 837.

"'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the

official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer,* 511 U.S. at 847).

Neither negligence nor gross negligence warrant liability under the Eighth Amendment. *Farmer,* 511 U.S. at 835-36 & n4. An "official's failure to alleviate a significant risk that he should have perceived but did not, ... cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

Liberally construing these standards for the purposes of screening, the Court recommends finding that Plaintiff has stated a cognizable claim for failure to protect/failure to intervene against defendants Cruz, Rodriguez, and DOES 1-5. As indicated by Plaintiff, he was directed to perform a prohibited task that posed a possible substantial risk of serious harm and an excessive risk to his safety. Moreover, the other correctional officers either assisting or present did not intervene despite the potential for serious harm to result.

In short, Plaintiff has stated a cognizable claim for failure to protect in violation of the Eighth Amendment.

**d. Deliberate Indifference to Serious Medical Needs**

Plaintiff's complaint includes a claim of deliberate indifference to serious medical needs against Dr. Aggarwal, RN Price, Beyerlein, Martin, Ballesteros, Alcantar, and numerous DOE defendants.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate

indifference to a prisoner's medical issue is established only where the Defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)), overruled on other grounds *by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett,* 439 F.3d at 1096 (citation omitted).

As to the subjective standard, a prison official or prison medical provider acts with "deliberate indifference…only if the [prison official] knows of and disregards a excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 101, 1057 (9th Cir. 2004) (citation omitted). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how serious the risk." *Gibson*, 290 F.3d at 1188 (citation omitted).

"[T]he indifference to a [prisoner's] medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this [claim]." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citations omitted). "Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Lemire v. Cal. Dep't. of Corrections and Rehabilitation*, 726 F.3d 1062, 1082 (9th Cir. 2013).

Lastly, delays in providing medical care may manifest deliberate indifference. *Estelle*, 429 U.S. at 104–05. To establish a claim of deliberate indifference arising from a delay in

providing care, a plaintiff must show that the delay led to further harm and that Defendants purposefully ignored his medicals needs knowing about the risk of harm from delay in treatment. *See McGuckin*, 974 F.2d at 1060 (noting that delays in receiving medical care must be harmful and that "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established"); *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (noting that Defendants must be aware that a delay in treatment would be harmful).

With these standards in mind, the Court recommends finding that Plaintiff has failed to state a cognizable claim of deliberate indifference to serious medical needs. As to defendants CMO Doe 10, Martin and Beyerlin, all three are considered supervisors for the purposes of a § 1983 claim and, as outlined above, are not liable under § 1983.

As to defendants Physician Doe 11, PCP Doe 7, and PCP Doe 8, Plaintiff's allegations center around an alleged delay in receipt of care, specifically, orders related to either MRIs or x-rays. (ECF No. 1 at 22-23). However, Plaintiff has not sufficiently demonstrated that these alleged delays were the result of these defendants' purposeful intention to delay his care. Moreover, Plaintiff's complaint appears to claim that these delays were not a failure to respond to his claims of pain or medical need, but the result of delays generally present within medical care in the prison context.

Regarding Dr. Aggarwal, Physical Therapist Doe 9, PCP Doe 7 and 8, and RN Price Plaintiff has failed to establish that any of these defendants acted with deliberate indifference in responding to his complaints of pain or possible medical need. While Plaintiff asserts throughout his complaint that the course of treatment was not followed by defendants, he does not offer a basis for his belief that his proposed treatment was correct. Moreover, Plaintiff argues that some imaging that he received did not properly image his injured bicep area, but merely a general area of his left humerus. However, again, Plaintiff does not provide any evidence that this imaging was intentionally incorrect. Furthermore, these allegations, if true, would indicate a difference of opinion or at most negligence. Plaintiff does not allege

sufficient facts that any of these medical professionals acted with the intention to deprive Plaintiff of medical care that they believed he required.

Accordingly, the Court recommending finding that Plaintiff's complaint fails to state a claim for deliberate indifference to serious medical needs against any defendant.

**e. Retaliation**

A plaintiff may state a § 1983 claim for a violation of his First Amendment rights due to retaliation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted). To prevail on a retaliation claim, a plaintiff may "assert an injury no more tangible than a chilling effect on First Amendment rights." *Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009). Furthermore, "a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Id.* at 1271 (citing *Rhodes*, 408 F.3d at 568–69) (emphasis in original).

Under these standards, the Court recommends finding that Plaintiff has failed to state a cognizable claim of retaliation. While the filing of grievances against prison officials is considered protected conduct under the First Amendment, Plaintiff has failed to establish that an adverse action was taken against him for this conduct. Plaintiff alleges that he was transferred from KSVP to CSP-Corcoran because of his various grievances. However, Plaintiff only summarily asserts that the transfer occurred because of these grievances but otherwise provides no factual allegations supporting this conclusion.

In short, Plaintiff has failed to state a claim of retaliation under these standards.

**f. Access to Courts**

Plaintiff alleges a claim of denial of his right to access to courts because his requests for

medical records were denied, he suffered a prison transfer, and the overall grievance process was deficient. (ECF No. 1 at 27).

Under the First and Fourteenth Amendments to the Constitution, state inmates have a "'fundamental constitutional right of access to the courts.'" *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817 (1977)). To have standing to bring this claim, Plaintiff must demonstrate that he suffered an actual injury. *Id.* at 351-52. Notably, "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351. Plaintiff must allege that he was prejudiced with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a nonfrivolous claim. *Id.* at 349.

Moreover, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 354. Rather, Plaintiff must have been denied the necessary tools to litigate a nonfrivolous criminal appeal, habeas petition, or civil rights action. *Id.* at 354-55; *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). A claim "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Importantly, "the underlying cause of action [and the unavailable remedy], whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Harbury*, 536 U.S. at 415.

Generally, "the constitutional right of access requires a state to provide a law library or legal assistance only during the pleading stage of a habeas or civil rights action." *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995), *as amended* (May 23, 1995). However, the Ninth Circuit has recognized an exception in cases involving prison officials' "active interference" with an inmate's litigation activities, such as by destroying his legal materials, which differs from cases involving "affirmative assistance," such as a failure to provide adequate legal assistance as a tool for an inmate to litigate a case. *Silva v. Di Vittorio*, 658 F.3d 1090, 1096, 1102 (9th Cir. 2011) (emphasis omitted). Notably, "prisoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials." *Id.* at 1103

(emphasis in original).

Under these standards, the Court recommends finding that Plaintiff has failed to establish a cognizable claim of access to courts. If defendants hindered Plaintiff's ability to file a grievance, that may excuse his requirement to file a grievance before filing a lawsuit, but does not establish an independent constitutional violation. Finally, Plaintiff has not put forth factual allegations as to his need for his medical records, nor how such a need is necessary to pursue his legal claims.

Thus, for the purpose of screening, Plaintiff has failed to state a claim for access to courts in violation of the First and Fourteenth amendments.

**g. Improper Defendants**

Plaintiff appears to bring claims against CDCR, CCHCS, and the State of California for alleged policies, customs or practices that he asserts were at least somewhat responsible for his constitutional violations.

CDCR, CCHCS, and the State of California are not proper defendants for Plaintiff's claims. As described above, section 1983 applies to "persons" who violate someone's constitutional rights. CDCR and CCHCS are not persons—one entity is the State of California's Department for Corrections and Rehabilitation and the other is the State of California's Correctional Healthcare Services. *See Allison v. Cal. Adult Auth.,* 419 F.2d 822, 823 (9th Cir. 1969) (California Adult Authority and San Quentin State Prison not persons within meaning of Civil Rights Act). Moreover, CDCR and CCHCS are part of the State of California and thus is immune from this type of lawsuit under the Eleventh Amendment and the related doctrine of sovereign immunity. This also applies to the state itself. *See Brown v. Cal. Dep't of Corr.,* 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity); *Pittman v. Oregon Employment Dep't*, 509 F.3d 1065, 1071 (9th Cir. 2007) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.").

As such, CDCR, CCHS, and State of California are subject to dismissal.

**h. State Law Claims**

Plaintiff's complaint asserts numerous claims under California state law.

California's Government Claims Act[1] requires that a claim against the State[2] or its employees "relating to a cause of action for death or for injury to person" be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1245 (Cal. 2004); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act. *Bodde*, 32 Cal.4th at 1245; *Mangold*, 67 F.3d at 1477; *Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 627 (9th Cir. 1988). And, "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1239 (Cal. 2004); Cal. Gov't Code § 811.2 (defining "public entity" to include a county or public agency); Cal. Gov't Code § 954.4 (barring suit against public entity without notice of claim); Cal. Gov't Code § 950.2 (barring claim against public employe if claim would be barred against public entity for failure to comply with claims statute). This requirement applies in federal court. *See Clapp v. City and County of San Francisco*, 846 F. App'x 525, 526 (9th Cir. 2021) (affirming dismissal where plaintiff "failed to allege facts sufficient to show that he complied with, or was excused from, the claim presentment requirement of the California Government Claims Act" (citation omitted)).

As indicated in Plaintiff's complaint, he has failed to comply with the California Government Claims Act. While Plaintiff states that federal claims of violations brought under §

---

[1] This Act was formerly known as the California Tort Claims Act. *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

[2] "'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

1983 are exempt from the Government Claims Act, this exemption does not apply to state law claims. Moreover, Plaintiff states that he failed to bring forth his grievances in a timely manner as required by the Government Claims Act, which is a condition precedent to bringing forth a suit.

As such, the Court recommends finding that Plaintiff's complaint does not state any cognizable state law claims that may proceed past screening.

## IV. CONCLUSION AND ORDER

Accordingly, the Court respectfully requests the Clerk of Court assign a district judge to this matter.

Additionally, based on the foregoing, it is **RECOMMENDED** that:

1. This case proceed on Plaintiff's claim of failure to protect/failure to intervene violation of the Eighth Amendment against Defendants Cruz, Rodriguez and DOES 1-5.
2. All other claims and Defendants be dismissed with prejudice for failure to state a claim.

These Findings and Recommendations[3] will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** The parties are advised that failure to file objections within the specified time may result in the waiver of the

[3] If Plaintiff wishes to proceed on the claims the Court finds cognizable, he may file a notice of non-opposition and the Court will issue an order authorizing service of the complaint on Defendants Cruz and Rodriguez and an additional order allowing Plaintiff to obtain discovery to attempt to identify the true identity of Doe Defendants. However, if Plaintiff is unable to identify these Doe defendants, they will be dismissed.

"right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 26, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE